IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

STEVEN TEEL                                                                                               PLAINTIFF

      v.                                            CIVIL NO. 13-5302

CAROLYN W. COLVIN, Acting Commissioner
Social Security Administration                                                                 DEFENDANT

**MEMORANDUM OPINION**

      Plaintiff, Steven Teel, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claims for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI") under the provisions of Titles II and XVI of the Social Security Act ("Act"). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. § 405(g).

**I. Procedural Background**

      Plaintiff protectively filed applications for DIB and SSI on August 26, 2011, alleging disability since June 19, 2010, due to "mitro valve prolapse, disc herniation and annular tear, depression, explosive disorder, syncopal, neck, and memory loss." (Tr. 10, 54, 228). An administrative hearing was held on August 29, 2012, at which Plaintiff appeared with counsel and testified. (Tr. 49-80).

      By a written decision dated December 7, 2012, the ALJ found Plaintiff had the following severe impairments: "mitro valve prolapse, knee problems, back problems, neck problems, high blood pressure, and memory loss." (Tr. 12). After reviewing all of the evidence presented, the ALJ

determined Plaintiff's impairments did not meet or equal the level of severity of any impairment in the Listing of Impairments. (Tr. 12-14). The ALJ found Plaintiff retained the residual functional capacity ("RFC") to perform light work except:

> he can occasionally climb ramps/stairs and ladders/ropes/scaffolds. He can occasionally balance, stoop, kneel, crouch, and crawl. From a mental standpoint, he is able to perform work where interpersonal contact is incidental to the work performed; the complexity of tasks is learned and performed by rote, with few variables and little judgment; and the supervision required is simple, direct and concrete.

(Tr. 14).

With the help of a vocational expert ("VE"), the ALJ determined Plaintiff could perform his past relevant work ("PRW") as a production worker. (Tr. 17, 74-78). The ALJ then found Plaintiff had not been under a disability as defined by the Act during the relevant time period. (Tr. 17).

Plaintiff next requested a review of the hearing decision by the Appeals Council, which denied the request on October 22, 2013. (Tr. 1-4). Subsequently, Plaintiff filed this action. (Doc. 1). This case is before the undersigned pursuant to the consent of the parties. (Doc. 5).  Both parties have filed appeal briefs, and the case is ready for decision. (Doc. 10, Doc. 12).

**II. Applicable Law.**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance, but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that

would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000).

A claimant for Social Security Disability Benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in substantial gainful activity. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(3)(c). A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. See 20 C.F.R. § 404.1520. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of his RFC.

**III. Discussion**

On appeal, Plaintiff comprehensively argues the ALJ erred by (1) failing to develop the record; (2) failing to consider Plaintiff's impairments in combination; (3) finding Plaintiff was not fully credible; (4) finding Plaintiff's RFC was light work; and (5) finding Plaintiff could perform his PRW. (Doc. 10 at 2).

**A. Development of the Record**

The ALJ has a duty to fully and fairly develop the record. See Frankl v. Shalala, 47 F.3d 935, 938 (8th Cir. 1995). The ALJ's duty to fully and fairly develop the record is independent of Plaintiff's burden to press his case. Vossen v. Astrue, 612 F.3d 1011, 1016 (8th Cir. 2010). The ALJ, however, is not required to function as Plaintiff's substitute counsel, but only to develop a reasonably complete record. See Shannon v. Chater, 54 F.3d 484, 488 (8th Cir. 1995)("reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial."). "The regulations do not require the Secretary or the ALJ to order a consultative evaluation of every alleged impairment. They simply grant the ALJ the authority to do so if the existing medical sources do not contain sufficient evidence to make a determination." Matthews v. Bowen, 879 F.2d 422, 424 (8th Cir. 1989).

Plaintiff did not analyze how the ALJ failed to develop the record or point to any prejudice suffered other than stating, "the ALJ neglected to properly evaluate the extent and limiting effects of [Plaintiff's] diagnosed syncope, depression, and anxiety without procuring any medical evidence to support his conclusion." (Doc. 10 at 18).

The record included extensive testing and physician reports from 2011 and 2012, which examined Plaintiff's syncope and heart complaints. (Tr. 307-308, 310, 314-316, 318, 324-325, 327-

329). While the ALJ did not order a new mental consultative exam, the record included a mental consultative exam by Dr. Terry Efird[1] on July 1, 2009, notes from Plaintiff's treatment at Ozark Guidance in 2011, and mental RFC assessments from Dr. Diane Kogut in November 2011 and Dr. Jerry Henderson in February 2012. (Tr. 270-274, 280-287, 291, 410-422, 472).

The Court finds the ALJ fully and fairly developed the record. See Battles v. Shalala, 36 F.3d 43, 45 (8th Cir. 1994).

**B. Combination of Impairments**

The ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 12). The ALJ also stated in his decision that "disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months." (Tr. 10). The ALJ further noted in his decision that at Step Two, "the undersigned must determine whether the claimant has a medically determinable impairment that is severe or a combination of impairments that is severe." (Tr. 11). He also stated that if the claimant did not have a severe medically determinable impairment "or combination of impairments," he is not disabled, but that if the claimant has a severe impairment "or combination of impairments," the analysis proceeds to the third step. (Tr. 11). The

---

[1] Plaintiff was also examined by Dr. Terry Efird on July 1, 2009, before the relevant time period, as part of a prior disability case. (Tr. 270-274). Dr. Effird opined Plaintiff had nothing more than mild problems and assessed Plaintiff's GAF as a 55-65. (Tr. 273).

ALJ continued to refer to the need to consider the combination of impairments in the remainder of his decision.

As noted by Defendant, the Eighth Circuit Court of Appeals has held that such language demonstrates that the ALJ considered the combined effect of Plaintiff's impairments. See Hajek v. Shalala, 30 F.3d 89, 92 (8th Cir. 1994).

The Court finds that Plaintiff's argument is without merit, and the ALJ properly considered Plaintiff's impairments both singularly and in combination.

### C. Credibility Determination

The ALJ was required to consider all of the evidence relating to Plaintiff's subjective complaints, including evidence presented by third parties, that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id. It is well established that "credibility is primarily a matter for the ALJ to decide." Edwards, 314 F.3d at 966 (8th Cir. 2003). The ALJ is entitled to make a factual determination that a claimant's subjective complaints are not credible when contrary objective medical evidence exists. Ramirez, 292 F.3d at 581 (8th Cir. 2002).

The written decision shows the ALJ addressed the Polaski factors. The ALJ discounted Plaintiff's claims of disabling pain for the following reasons: (1) Plaintiff requested his driving privileges be reinstated based on his improved perception of his medical condition; (2) Plaintiff

reported his medication controlled his conditions; (3) Plaintiff had a very high level of physical activity, including bicycling around town; (4) Plaintiff reported working as a fork lift driver on the night shift in 2011; and (5) the record as a whole demonstrated Plaintiff's conditions were treated conservatively and controlled with medications. (Tr. 14-16).

These were valid reasons for discounting Plaintiff's claims and were consistent with the record. See e.g., Renstrom v. Astrue, 680 F.3d 1057, 1067 (8th Cir. 2012); see also Casey v. Astrue, 503 F.3d 687, 696 (8th Cir. 2007)(deferring to the ALJ's credibility determination where the objective medical evidence did not support claims of physical impairments).

The Court also notes the record shows Plaintiff lost his job for reasons unrelated to disability and was drawing unemployment benefits near his alleged onset date. (Tr. 27, 58). Accepting unemployment benefits is an assertion of the ability to work and inconsistent with a claim of disability. Cox v. Apfel, 160 F.3d 1203, 1208 (8th Cir. 1998). Additionally, Plaintiff was extremely active. He reported cutting firewood for his wood stove and biking, sometimes more than twenty miles, to his medical appointments. (Tr. 34, 346-347). Plaintiff also reported that tramadol and naproxen, an over-the-counter pain medication, controlled his physical conditions and that medications managed his depression and anxiety. (Tr. 260, 282-287, 324-325, 346, 365, 367, 491).

Accordingly, the Court finds substantial evidence supports the ALJ's conclusion that Plaintiff's subjective complaints were not entirely credible.

**D. RFC**

RFC is the most a person can do despite that person's limitations, and is assessed using all relevant evidence in the record. 20 C.F.R. §404.1545(a)(1). This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of limitations.

Guilliams v. Barnhart, 393. F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. §404.1545(a)(3). A claimant's residual functional capacity is a medical question, Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001), therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). The ALJ is required to specifically set forth a claimant's limitations and to determine how those limitations affect his RFC. Id.

Plaintiff's RFC argument provides no analysis and only repeats that the ALJ failed to consider Plaintiff's impairments in combination by not addressing his mental impairments. (Doc. 10 at 17-18).

The ALJ, however, addressed Plaintiff's mental impairments in the written decision. He discussed Plaintiff's brief treatment for depression at Ozark Guidance, physician reports of his behavior and mood at examinations, and treatment for depression and anxiety by Dr. Vicky Moore, Plaintiff's treating physician. (Tr. 18). The ALJ also considered the medical assessments of the State's consulting physicians, Plaintiff's subjective complaints, and Plaintiff's medical records as a whole before determining an RFC. (Tr. 16).

The record shows Plaintiff's chronic conditions were treated by Dr. Moore, who prescribed, at different times, naproxen, tramadol, Flexeril, Vicodin, and a lidocaine patch for pain; Buspar for anxiety; Paxil for depression; Bystolic for high blood pressure; and nitroglycerin as an abortive for chest pain. (Tr. 327-329, 347). Plaintiff consistently reported his pain was controlled by medications. (Tr. 346, 359-363). At a visit in April 2010, Plaintiff reported Bystolic and nitroglycerin controlled

his chest pain, had been only "occasional" since February 2010. (Tr. 358-359, 371, 375). In January 2011, Dr. Moore observed that Plaintiff had not needed to use his nitroglycerin for some time. In April 2011, Dr. Moore noted Plaintiff felt he didn't need to take his Vicodin. (Tr. 346). Dr. Moore suggested in May 2011 that Plaintiff's syncope or "dizzy spells" may be related to heat, hydration, and diet, but suggested he see a cardiologist. (Tr. 338, 344-345). Plaintiff finally agreed to see a cardiologist on Dr. Moore's insistence after a July 2011 conversation. (Tr. 338).

As the ALJ discussed, an echocardiogram, stress test, tilt table test, and Holter monitor study in August 2011 were reviewed by Dr. Amr Gouda El-Shafei, who ruled out serious cardiovascular problems. (Tr. 307-308, 310, 314-318, 324-329). Dr. El-Shafei also noted Plaintiff's chest pain only occurred when he was out of naproxen, determined Plaintiff's syncope was unexplained, and released Plaintiff with temporary instructions not to drive. (Tr. 324-326). Plaintiff was seen by Dr. Gottfried Jean-Louise, a neurologist, the same day, who opined Plaintiff could drive if he took precautions, stated Plaintiff's syncope was likely related to hypertension or medications, and suggested decreasing his Bystolic dose. (Tr. 451-452, 455). At a follow-up on December 12, 2011, Dr. El-Shafei noted Plaintiff's reports that he had been syncope free since July and opined Plaintiff had "no frank syncope on beta blockers." (Tr. 444).

On May 21, 2012, Plaintiff saw Dr. Moore, who discussed lowering Plaintiff's Bystolic because his blood pressure was running too low. (Tr. 484). On June 18, 2012, Plaintiff had a follow-up with Dr. Moore, who told Plaintiff he must eat six times a day, limit his biking to around town and avoid long-distances, and use bicycle saddle bags instead of a backpack. (Tr. 481-482). On August 2, 2012, Plaintiff was examined by Dr. Leslie Stone to determine if he could have his driver's license reinstated. (Tr. 478). Dr. Stone opined she would "give clearance to re-instate his driver's

license privileges, only on condition he stop any medication which may impair consciousness." (Tr. 479).

As for Plaintiff's mental health conditions, Dr. Moore began prescribing Paxil for Plaintiff's depression and anxiety in July 2010. (Tr. 367-368). In August 2010, Plaintiff reported he felt much better on Paxil. (Tr. 365). In March 2011, Plaintiff was prescribed Buspar for anxiety. (Tr. 349-350). Based on Dr. Moore's suggestion, Plaintiff established treatment at Ozark Guidance for behavioral counseling in May 2011. His treatment lasted two visits, and he was diagnosed with possible depression, anxiety, relationship problems, a history of ADHD, and intermittent explosive disorder. (Tr. 280-291). Courtney Brian, LCSW, assessed Plaintiff's GAF as 60 at Plaintiff's initial visit. (Tr. 280). Plaintiff's DLA, a measure of Plaintiff's daily activities, was assessed as a 34/60 by Lindsey Meyers, LCSW, at Plaintiff's only follow-up visit on July 20, 2011. (Tr. 285-287). Plaintiff then discontinued treatment.

Diane Kogut, a State non-examining psychiatrist, submitted a mental RFC assessment on November 30, 2011, and opined Plaintiff "does not have a severe mental health impairment, [Plaintiff] is primarily limited by physical problems." (Tr. 410-422). Dr. Jerry Henderson, a State non-examining psychiatrist, affirmed Dr. Kogut's opinion on February 6, 2012. (Tr. 472). On December 6, 2011, Dr. Dan Gardner, a State non-examining physician, submitted a physical RFC assessment and opined Plaintiff's RFC was light. (Tr. 435). Dr. Sharon Keith, a State non-examining physician, affirmed the opinion on February 8, 2012. (Tr. 477).

A careful review of the record shows Plaintiff's conditions were minor or controlled with medications. Plaintiff's daily activities and treatment records indicated no serious medical problems,

and medications controlled his mental problems. Conditions controlled by treatment or medications are not disabling. See Renstrom v. Astrue, 680 F.3d 1057, 1066 (8th Cir. 2012).

Accordingly, the Court finds there is substantial evidence to support the ALJ's RFC findings.

**E. Past Relevant Work**

Plaintiff has the initial burden of proving that he suffers from a medically determinable impairment which precludes the performance of past work. Kirby v. Sullivan, 923 F.2d 1323, 1326 (8th Cir. 1991). Only after the claimant establishes that a disability precludes performance of past relevant work does the burden shift to the Commissioner to prove that the claimant can perform other work. Pickner v. Sullivan, 985 F.2d 401, 403 (8th Cir. 1993).

According to the Commissioner's interpretation of past relevant work, a claimant will not be found to be disabled if he retains the RFC to perform:

1. The actual functional demands and job duties of a particular past relevant job; or

2. The functional demands and job duties of the occupation as generally required by employers throughout the national economy.

20 C.F.R. §§ 404.1520(e); S.S.R. 82-61; Martin v. Sullivan, 901 F.2d 650, 653 (8th Cir. 1990)(approving the two part test from S.S.R. 82-61).

The Court notes the ALJ relied upon the testimony of a vocational expert. In response to a properly phrased hypothetical question, which included the limitations addressed in the RFC determination, the VE testified that the hypothetical individual would be able to perform Plaintiff's past relevant work of production worker. See Gilbert v. Apfel, 175 F.3d 602, 604 (8th Cir. 1999) ("The testimony of a vocational expert is relevant at steps four and five of the Commissioner's sequential analysis, when the question becomes whether a claimant with a severe impairment has

the residual functional capacity to do past relevant work or other work"); see also Robson v. Astrue, 526 F.3d 389, 392 (8th Cir. 2008) (holding that a VE's testimony is substantial evidence when it is based on an accurately phrased hypothetical capturing the concrete consequences of a claimant's limitations).

Accordingly, the Court finds substantial evidence to support the ALJ's finding that Plaintiff could perform his past relevant work as a production worker.

**IV. Conclusion:**

Having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision should be affirmed. The undersigned further finds that the Plaintiff's complaint should be dismissed with prejudice.

Dated this 13th day of March, 2015.

                                                            s/ *Erin L. Setser*
                                                          HON. ERIN L. SETSER
                                                          UNITED STATES MAGISTRATE JUDGE